REQUESTED BY: Stuart B. Mills Thurston County Attorney
Is the tangible personal property of a corporation incorporated under Indian tribal law subject to taxation pursuant to Neb.Rev.Stat. § 77-1201 (Reissue 1981)?
No, provided the tribally-chartered corporation is doing business upon an Indian land or reservation, and the majority of the corporation's stock is owned by Indians.
You have requested our opinion on the question of whether the tangible personal property of a corporation incorporated under Indian tribal law is subject to taxation pursuant to Neb.Rev.Stat. § 77-1201 (Reissue 1981). The corporation is chartered under the authority of the Corporate Charter, Constitution, and Bylaws of the Winnebago Tribe of Nebraska. The President and Chairman of the Board of Directors of the corporation is an enrolled member of a Native American Indian tribe.
Generally, "[T]he federal purposes implicit in setting aside Indian country for the residents of a tribe — self-government and economic support — pre-empt state jurisdiction to tax Indians and tribes therein, unless Congress authorizes the tax." F. Cohen, Handbook of Federal Indian Law, 406 (1982 ed.). In several recent cases, the United States Supreme Court has relied on the doctrine of federal pre-emption to shield Indians and their businesses on the reservation from various forms of state and local taxation. E.g., McClanahan v. Arizona State Tax Commission, 411 U.S. 164
(1973) (state net income tax); Bryan v. Itasca County,426 U.S. 373 (1976) (personal property tax). In Bryan v. Itasca County, supra, the Court set out the standards for determining whether congressional authorization existed to permit state taxation of Indian activities in Indian country. The Court in Bryan held that statutory authorization for states to tax reservation Indians would be found only where "Congress has manifested a clear purpose" to allow taxation. 426 U.S. at 392 (quoting Oklahoma Tax Commission v. United States, 319 U.S. 598, 613-14 (1943) (Murphy, J., dissenting)). The Court concluded the grant of civil jurisdiction to the states contained in 28 U.S.C. § 1360
was not a congressional grant of authority to tax reservation Indians. 426 U.S. at 392-93.
The question of whether an Indian-owned corporation should have the same immunity from taxation accorded to Indians has apparently not been authoritatively determined. In Eastern Navajo Industries, Inc. v. Bureau of Revenue,89 N.M. 805, 552 P.2d 805 (N.M.Ct.App.), cert. denied,90 N.M. 7, 558 P.2d 619 (1976), cert. denied, 430 U.S. 459
(1977), the New Mexico Court of Appeals held a state-chartered corporation which was fifty-one per cent Indian owned should be treated the same as an Indian for purposes of determining the state's taxing jurisdiction over activities conducted on the reservation. The Court in Eastern Navajo Industries stated:
. . . we must look beyond the taxpayer's corporate form to the fact that 51% of its stock is owned by individual Navajo Indians. Consequently, there is no alternative but to view the assessment by the Bureau of Revenue as a tax upon Indians doing business upon an Indian land or reservation.
* * *
Eastern Navajo Industries is an Indian entity, according to federal definitions, so that the imposition of the gross receipts tax on this taxpayer constitutes an interference with Indian self-government. Id. at ___,552 P.2d at 809-10.
In Makah Indian Tribe v. Clallam County, 73 Wn.2d 677, 440 P.2d 442 (1968), the Washington Supreme Court held a county could not impose a tax on personal property located on a reservation and owned by an Indian and her non-Indian spouse. In reaching this conclusion, the court emphasized the interference with federal Indian policy created by virtue of the tax, stating: The reasons for such a ruling lie almost exclusively in the discernible federal policy of encouraging Indians to become economically self-sufficient on their reservations. In some instances, the government even augments the policy by supplying the means. We are simply adapting this policy of encouragement to property acquired by the Indians as the fruits of their own work, labor and enterprise as well as to the property given by the United States in aid of tribal Indians. Id. at ___,440 P.2d at 447. The court reasoned that property used in business should be exempt based on the government's purpose of fostering the successful development by Indians of business enterprises on reservations. Id. at ___, 440 P.2d at 447.
We have been unable to find any cases dealing directly with the tax status of corporations chartered under tribal law. It has been suggested the tax status of such corporations may depend on their ownership and purposes. F. Cohen, Handbook of Federal Indian Law, 439 (1982 ed.). With regard to the taxability of personal property located on Indian land, one commentator has stated the following:
 The personalty's location on protected Indian land should also be a sufficient condition for the exemption, because to tax such property directly frustrates federal policy both by decreasing the land's rental value and by impairing its usefulness to Indian owners who choose to use the land themselves. Maximum utilization of land frequently requires either the erection of costly improvements or the use of expensive machinery on the land, and the Indians' ability to afford either would be greatly reduced by a tax burden on personal property. This is especially true in the case of an ad valorem tax, which further discourages the use of costly property. Comment, Indian Taxation: Underlying Policies and Present Problems, 59 Calif. L.Rev. 1261, 1281 (1971).
Based on the foregoing, we believe the personal property of the tribally-chartered corporation referred to in your question would not be subject to taxation under Neb.Rev.Stat. § 77-1201 (Reissue 1981). There appears to be no clear authorization by Congress to impose such a tax, as required by the Supreme Court's decision in Bryan v. Itasca County. Furthermore, assuming the majority of the corporation's stock is held by Indians, the Eastern Navajo Industries case indicates an Indian-owned corporation doing business upon an Indian land or reservation is immune from taxation. The fact that this corporation is not a state-chartered corporation, but one incorporated under tribal law, would seem to strengthen the argument for immunity. Finally, we believe our position is consistent with the federal policy of encouraging successful Indian business enterprises on reservations to foster the tribe's economic development.
It is therefore our opinion that the personal property of a tribally-chartered corporation doing business upon an Indian land or reservation, where the majority of the corporation's stock is owned by Indians, is immune from the tax imposed under § 77-1201.
Very truly yours,
ROBERT M. SPIRE Attorney General
L. Jay Bartel Assistant Attorney General